UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

MALIBU MEDIA, LLC,

                       Plaintiff,

      -against-

JOHN DOE subscriber assigned IP address
66.108.67.10,

                       Defendant.

------------------------------------------------------------- X

**ORDER AND OPINION
DENYING MOTION FOR LEAVE
TO SERVE A THIRD PARTY
SUBPOENA PRIOR TO RULE
26(f) CONFERENCE**

15 Civ. 4369 (AKH)

**ALVIN K. HELLERSTEIN, U.S.D.J.:**

On June 5, 2015, Plaintiff Malibu Media, LLC filed this lawsuit against an
unnamed and unidentified Defendant, John Doe, as the subscriber to an identified internet
protocol ("IP") address, "IP 66.108.67.10." The case appears to be part of the latest iteration of
"a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging
copyright infringement by individuals utilizing a computer protocol known as BitTorrent." *In re
BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 82 (E.D.N.Y. 2012).
Malibu alleges that John Doe violated the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, by
downloading and sharing over the internet a large file containing 127 movies owned by Plaintiff,
including such titles as *Cum In Get Wet* and *Tie Her Up For Me* (Compl. Ex. B.) Malibu alleges
that its investigator, IPP International UG, "downloaded one or more bits of each of the digital
media files" from John Doe, (Compl. ¶ 20), and used "proven IP address geolocation
technology" to trace the internet activity in question to a Time Warner Cable ("TWC") account
in this district. (Compl. ¶ 6). Malibu also alleges that "Defendant's Internet Service Provider can
identify the Defendant," (Compl. ¶ 11), and on June 18, 2015, it moved for leave to subpoena

Time Warner Cable pursuant to Fed. R. Civ. P. 26(d)(1) to discover the identity of the individual

to whom the IP address is registered. For the following reasons, Malibu's motion is denied.

### LEGAL STANDARD

Ordinarily, a "party may not seek discovery from any source before the parties

have conferred as required by Rule 26(f), except in a proceeding exempt from initial disclosure

under Rule 26(a)(1)(B),[1] or when authorized by these rules, by stipulation, or by court order."

Fed. R. Civ. P. 26(d)(1). The Court can order earlier discovery if the party seeking discovery

shows "good cause." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005). The

following factors frame the "good cause" inquiry in cases of online copyright infringement:

> (1)[the] concrete[ness of the plaintiff's] showing of a *prima facie*
> claim of actionable harm, . . . (2) [the] specificity of the discovery
> request, . . . (3) the absence of alternative means to obtain the
> subpoenaed information, . . . (4) [the] need for the subpoenaed
> information to advance the claim, . . . and (5) the [objecting] party's
> expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quoting *Sony Music Entm't v.*

*Does 1-40*, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)). A pre-conference subpoena motion,

like any "motion seeking a discovery ruling[,] is addressed to the discretion of the district court."

*Baker v. F & F. Inv.*, 470 F.2d 778, 781 (2d Cir. 1972).

### BACKGROUND

### I.   BitTorrent

The Court's understanding of BitTorrent comes primarily from Judge Spratt's

opinion in *Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233 (E.D.N.Y. 2012), Judge Marrero's

---

[1] Rule 26(a)(1)(B) is not applicable to this case. It covers actions for review on an administrative record, forefeiture actions *in rem*, *habeas* actions, *pro se* actions by prisoners, administrative summons enforcement, actions by the United States to recover payments or to collect on student loans, ancillary proceedings, and arbitration enforcement

opinion in *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165 (S.D.N.Y. 2012),

and Magistrate Judge Brown's opinion in *In re BitTorrent Adult Film Copyright Infringement*

*Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012). BitTorrent is a peer-to-peer file-sharing protocol that

allows users to transfer large files over the internet by breaking the complete file (the "Seed")

into small pieces to be downloaded in parts. Other users ("Peers") download a small "torrent"

file that contains an index of the pieces and directions for connecting to the Seed. When Peers

connect to the Seed, they download pieces of the file at random, and begin sharing each piece

once it has completed downloading. After all the pieces are downloaded, the BitTorrent software

reassembles the pieces into a complete file for the Peer to view.

BitTorrent is distinguished from other file sharing protocols by its users' ability to

upload and download files simultaneously. This non-sequential download structure reduces the

bottleneck of traffic, which allows for faster download speeds. The Peers that are uploading and

downloading the same Seed file from each other at a given point in time are collectively called a

"Swarm." Members of a Swarm are able to see the IP addresses of other Peers to whom they are

connected. In addition, BitTorrent "tracks" the pieces of a file as it is shared, so Peers can

identify the IP addresses from which the file was downloaded.

## II.    Copyright Trolls

Recent empirical studies show that the field of copyright litigation is increasingly

being overtaken by "copyright trolls," roughly defined as plaintiffs who are "more focused on

the business of litigation than on selling a product or service or licensing their [copyrights] to

third parties to sell a product or service." Matthew Sag, *Copyright Trolling, An Empirical Study*,

100 IOWA L. REV. 1105, 1108 (2015). "The paradigmatic troll plays a numbers game in which it

targets hundreds or thousands of defendants, seeking quick settlements priced just low enough

3

that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.* The

lawsuits most frequently target anonymous John Does for alleged infringement related to the use

of BitTorrent. Indeed, of "the 3,817 copyright law suits filed in 2013, over 43% were against

John Does and more than three-quarters of those related to pornography" *Id.* at 1108-09. But

almost none ever reaches a hearing. Rather, the "lawsuits are filed to take advantage of court-

ordered discovery [under Fed. R. Civ. P. 26(d)] to break the veil of anonymity that separates IP

addresses from the account information of actual human beings." *Id.* at 1109; *see also Digital*

*Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). They then use this information to

quickly negotiate settlements on mass scale without any intention of taking the case to trial.[2] *See,*

*e.g., Media Prods., Inc., DBA Devil's Film v. John Does 1-26*, No. 12-cv-3719, at 4 (S.D.N.Y.

June 18, 2012) (explaining that the settlements in these BitTorrent cases are "are for notoriously

low amounts relative to the possible statutory damages, but high relative to the low value of the

work and minimal costs of mass litigation. Cases are almost never prosecuted beyond sending

demand letters and threatening phone calls.").

   In 2012, judges in the Southern District and across the country began awakening

to the danger of copyright trolls, especially in the context of pornography. For example, the late

Judge Harold Baer, Jr. explained that "[i]n such cases, there is a risk not only of public

embarrassment for the misidentified defendant, but also that the innocent defendant may be

---

[2] Initially, these lawsuits attempted to join every Peer from a given BitTorrent Swarm in infringement actions, which is why the defendants in the captions are typically "John Does 1-X," with X being a large number. However, over the past few years, judges in this District and others became hostile to mass joinder in these cases, characterizing the approach as an effort to circumvent the filing fees owed by Plaintiff. *See, e.g., Digital Sins, Inc. v. John Does 1-245*, 11-cv-8170, 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (Judge McMahon explaining that "[t]he only economy that litigating these cases as a single action would achieve is an economy to plaintiff—the economy of not having to pay a separate filing fee for each action brought."). Facing higher costs, many of the most prominent filers seem to have ceased bringing large-scale "John Doe" actions. Remaining entities now sue each defendant individually.

coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations." *Media Prods., Inc*, No. 12-cv-3719, at 4. The largest copyright trolls were increasingly unscrupulous in abusing the litigation process to exploit this dynamic. *See In re BitTorrent Adult Film Copyright Infringement Cases,* 296 F.R.D. 80, 89 (E.D.N.Y. 2012) ("The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants."); *Patrick Collins, Inc. v. Doe 1, Patrick Collins, Inc. v. John Does 1-37*, No. 12-cv-1259, 2012 WL 287832, at *3 n.2 (C.D. Cal. Jul. 11, 2012) ("the federal courts are not flexible enough to be shaped into 'cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that [Plaintiffs have] no intention of bringing to trial.'"); *Malibu Media, LLC v. Does 1-5,* 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) ("This Court shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded."); *Digital Sins, Inc. v. John Does 1-245*, No. 11-cv-8170, 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) ("In these BitTorrent cases, [] numerous courts have already chronicled abusive litigation practices . . . ."); *SBO Pictures, Inc. v. Does 1-20,* No. 12-cv-3925, 2012 WL 2034631, at *1 (S.D.N.Y. June 5, 2012) ("Finally, early discovery has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability."); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The Plaintiffs

seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.").

These tactics, warned Judge Baer, "could turn copyright protection on its head." *Media Prods., Inc., DBA Devil's Film v. John Does 1-26*, 12-cv-3719, at 4 (S.D.N.Y. June 18, 2012). In order to prevent that from happening, judges began attaching conditions to the various subpoenas they issued, but have found that plaintiffs often ignore them.

### III.    **Malibu Media, LLC**

Malibu Media, LLC is a California company owned by Collette Field and her husband, Brigham Field. The company produces erotic videos and distributes them through its subscription website, "X-art.com." Subscribers can obtain unlimited access to Malibu's pornographic video catalog for a monthly fee of $24.95 or $99.95 annually. (Field Decl. ¶ 12).

Malibu hires private investigators to seek out internet users who download or share Malibu-copyrighted videos (*See* Compl. ¶ 20), and brings lawsuits against them. Malibu is a prolific litigant: between January and May 2014, for example, Malibu was responsible for 38% of copyright lawsuits filed in the United States. Gabe Friedman, *The Biggest Filer of Copyright Lawsuits? This Erotica Web Site*, NEW YORKER, May 14, 2014, *available at* http://www.newyorker.com/currency-tag/the-biggest-filer-of-copyright-lawsuits-this-erotica-web-site. And the company has filed more copyright actions against John Doe defendants than any other plaintiff in each of the past three years. *See* Sag, *supra* at 1132.

Malibu spends much of its brief touting its integrity as a content-producer and distinguishing itself from copyright trolls. It cites comments by Judge Baylson during a 2013 "bellwether" trial in the Eastern District of Pennsylvania meant to test the viability of Malibu's claims. Judge Baylson stated that "Malibu is not what has been referred to in the media and

legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, Civ. A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

However, Malibu's corporate strategy relies on aggressively suing for infringement and obtaining accelerated discovery of the IP address holder's identity from the ISP. It then seeks quick, out-of-court settlements which, because they are hidden, raise serious questions about misuse of court procedure. Judges regularly complain about Malibu. For example, in May, Judge Timothy Black of the Southern District of Ohio surveyed some of Malibu's questionable conduct in litigations across the country. *See* Order to Show Cause, ECF Doc. No. 15, *Malibu Media, LLC v. Ryan Ramsey*, No. 14-cv-718 (S.D. Ohio May 26, 2015). He found that, while "Malibu Media asserts that it is necessary to invoke the Court's subpoena power to 'propound discovery in advance of a Rule 26(f) conference' . . .[,] not a single one of these 60 cases [filed in this district over the previous 12 months] has even progressed to a Rule 26(f) conference." *Id.* at 5. Indeed, most are dismissed even without the issuance of a summons. *Id.* Malibu's motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements. *Id.* at 8 (citing *Malibu Media, LLC v. Does 1-54*, No. 12-cv-1407, 2012 WL 30302, at *5 (D. Colo. July 25, 2012); *Malibu Media, LLC v. Does*, 923 F. Supp. 2d 1339, 1345-46 (M.D. Fla. 2013)).

Malibu effectuates its strategy by employing tactics clearly calculated to embarrass defendants. For example, in recent complaints filed in the Wisconsin federal courts, an attached "Exhibit C" listed additional pornographic videos downloaded to the defendants' IP

addresses using BitTorrent. The titles in Exhibit C were extremely racy and lewd,[3] and the

district court sanctioned Malibu when it learned that Malibu did not even own the copyrights for

the titles; rather, it had gratuitously listed them to coerce larger, faster settlements by further

shaming defendants. *See Malibu Media LLC v. John Doe subscriber assigned IP address

24.183.51.58*, 2013 WL 4821911 (W.D. Wis. Sep. 10, 2013); *Malibu Media, LLC v. Doe,* No.

13-cv-536, 2013 WL 6579338, at *4 (E.D. Wis. Dec. 12, 2013).

When courts have attempted to place restrictions on the subpoena to prevent

Malibu from abusing the process to extort defendants, Malibu has flagrantly disregarded them.

For example, after one court issued "two orders unambiguously ordering [Malibu] to file [the

identified IP-registrant's name] under seal," Malibu filed it publicly anyway. Order to Show

Cause, ECF Doc. No. 17, *Malibu Media, LLC v. Austen Downs*, 14-cv-707 (S.D. Ohio May 26,

2015). And in the Eastern District of New York, Magistrate Judge Gary Brown took additional

precautions to protect John Doe's identity by explicitly instructing that "the subpoenaed

information be sent directly to the Court, *ex parte* and under seal." *Patrick Collins, Inc. v. Doe 1*,

288 F.R.D. 233, 236 (E.D.N.Y. Nov. 20, 2012). Malibu instead served subpoenas that requested

the identifying information be sent directly to Plaintiff's counsel. *Id.*

## DISCUSSION

Plaintiff asserts that good cause exists to grant its motion to subpoena Time

Warner Cable, the internet provider, because (a) it has established a *prima facie* claim for

copyright infringement against Defendant; (b) it has clearly identified the specific information it

seeks; (c) there is no other way to obtain Defendant's identity; (d) identifying the Defendant is

necessary for Plaintiff to advance his claims; and (e) Defendant does not have a legitimate

---

[3] e.g. "[Bestiality] Young Blond . . . Dog (www.sickporn.in)" is the redacted version of one such title.

8

interest in remaining anonymous. In support of its motion, Malibu filed declarations by Collette

Field, the owner of Malibu, and Patrick Paige, a former detective in the Palm Beach County

Sheriff's Department who worked in the computer crimes unit.

First, it is doubtful whether Malibu has in fact established a *prima facie* claim

here. A *prima facie* copyright infringement claim consists of two elements: (1) ownership of a

valid copyright, and (2) copying of constituent elements of the work that are original. *See Feist

Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.* 499 U.S. 3400, 361 (1991). As Judge Marrero observed

in *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012), "if the

Motion Picture is considered obscene, it may not be eligible for copyright protection."  Further,

even if Malibu's copyrights are valid, Malibu has not established a violation by the individual *to

whom the relevant IP address is registered*. As Judge Oetken explains,

> [t]he fact that a copyrighted work was illegally downloaded from a
> certain IP address does not necessarily mean that the owner of that
> IP address was the infringer. Indeed, the true infringer could just as
> easily be a third party who had access to the internet connection,
> such as a son or daughter, houseguest, neighbor, or customer of a
> business offering internet connection.

*Patrick Collinc, Inc. v. Does 1-6*, No. 12-cv-2964, 2012 WL 2001957, at *1 (S.D.N.Y. June 1,

2012) (internal citations omitted); *see also In re BitTorrent Adult Film Copyright Infringement

Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2012) ("[T]he assumption that the person who pays for

Internet access at a given location is the same individual who allegedly downloaded a single

sexually explicit film is tenuous, and one that has grown more so over time."); *Digital Sin, Inc. v.

John Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (Judge Nathan finding that

approximately 30% of John Does identified by their internet service providers are not the

individuals who actually downloaded the allegedly infringing films). The risk of

misidentification is great in a world with ubiquitous Wi-Fi, and given courts' concerns that these

sorts of allegations – especially by this plaintiff – are likely to coerce even innocent defendants into settling, the risk of misidentification is important to protect against.

And even if Plaintiff could definitively trace the BitTorrent activity in question to the IP-registrant, Malibu conspicuously fails to present any evidence that John Doe either uploaded, downloaded, or even possessed a complete copyrighted video file. (*See* Compl. ¶ 24 ("IPP International UG downloaded from Defendant *one or more bits* of each file hash listed on Exhibit A.") (emphasis added); Fieser Decl. ¶ 15 ("Our software downloaded one or more bits of each file hash listed on Exhibit A from the IP address referenced on Exhibit A.")). Another district court has noted that

> [i]ndividual BitTorrent file pieces are worthless . . . If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. . . .[T]he Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

*Malibu Media, LLC v. John Does 1-10*, No. 12-cv-3623, 2012 WL 5382304, at *3 (C.D. Cal. June 27, 2012).

Finally, Plaintiff's assertion that there is no alternative means of obtaining the desired information is inadequate. The only support for it comes from the declaration of Patrick Paige who, as Magistrate Judge Fox found in a different case, lacks personal knowledge of the methodology used by ISPs to match the IP address with its registrant. *Malibu Media, LLC v. John Doe subscriber assigned IP address 207.38.208.137*, 15-cv-1883, ECF Doc. No. 16 (Apr. 10, 2015). The Paige declaration that Judge Fox found deficient nearly three months ago is identical to the Paige declaration submitted in support of this motion. It fares no better this time.

There is no doubt that online piracy of digital media is a major problem today. Ordinarily, the "federal court system provides litigants with some of the finest tools available to assist in resolving disputes." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 89-90 (E.D.N.Y. 2012). Those tools can empower copyright-owners to enforce their rights, but they are also capable of being used as instruments of abuse. Where abuse is likely, as it is here, courts should not make those tools available without careful scrutiny.

### CONCLUSION

In light of Malibu's history of abuse of court process and its failure to show "good cause," I decline to give it the benefit of an exception to the normal rules of discovery. Plaintiff's motion for leave to serve a subpoena on Time Warner Cable is denied. The case will proceed in normal fashion.

The Clerk shall mark the motion (Doc. No. 5) terminated.

SO ORDERED

Dated:     July **6**, 2015
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge